IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHEL PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV686 |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| PETER KIEWIT SONS', INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 61).[1] The defendant filed a brief (Filing No. 62) and an index of evidence (Filing No. 63) in support of the motion. The plaintiff filed a brief (Filing No. 65) and an index of evidence (Filing No. 66) in opposition to the motion. The defendant filed a brief (Filing No. 67) in reply. For the reasons stated below, the court concludes the defendant's motion should be granted.

### INTRODUCTION

The plaintiff, an African-American male, is pursuing claims against his previous employer based upon allegations of violations of his civil rights arising under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e; 42 U.S.C. § 1981; and Nebraska statutory and common law, including the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 to 48-1126. The plaintiff also made allegations of defamation and slander. In the plaintiff's complaint, the plaintiff alleges the conduct giving rise to the lawsuit occurred between August 1, 2004 and September 22, 2004. The plaintiff alleges:

> On August 1, 2004, I was given a memorandum from the Equal Opportunity policy of [Kiewit] and my rights.
> On August 19, 2004, I was laid off from [Kiewit] by a carpenter's foreman. This wrongful layoff was a result of my never having been informed as to why I was laid off. On September 22, 2004, I called Jim Taylor, Kiewit Yard Foreman

---

[1]The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 23.

> regarding the lay-off. He claimed it as a budgetary move. . . . While they were laying me off, they retained at least three illegal immigrants at the job site. . . . I was nevertheless the only employee laid off.
>
> In attempting to justify the lay-off, Kiewit spokespersons claimed that I was not a good worker and was difficult to get along with. They added the claim that I wouldn't follow instructions. Kevin Murray told me I was not a good worker and did not care if I was a veteran or not. I asked Murray if he intended on calling me back to work. I was later informed by a union rep that my name was still at the top of the list, but he added that Kiewit did not want me back at the Company.
>
> At no time has Kiewit, in writing or verbally, ever made such statements to me directly. These false statement[s], defamatory and slanderous claims were made to justify their unfair layoff and the charges are of the type that would make a bystander believe that I was a poor employee. All of these false statement[s] from Kieweit, just so happen to be the grounds for immediate dismissal.

**See** Filing No. 1.

The defendant moves for summary judgment on each of the plaintiff's claims against it.[2] First, the defendant contends the plaintiff's claims for defamation and slander are time barred and unsupported by the record because the allegedly false statements were privileged. Second, the defendant argues the plaintiff fails to provide any evidence to support his claim that the layoff was due to anything except a lack of work. Third, the defendant argues the plaintiff failed to mitigate his damages precluding him from an award of back pay. Finally, the defendant argues there is no material fact in dispute about whether the plaintiff was laid off or was unlawfully treated because requests for admission served on the plaintiff are deemed admitted. The plaintiff denies summary judgment is appropriate.

---

[2]All claims against individual defendants Robert Edick, Kevin Murray and Mark Jensen were previously dismissed. **See** Filing Nos. 41, 43 and 49.

## UNCONTROVERTED FACTS

1. The plaintiff is a black male and a resident of the State of Nebraska. **See** Filing No. 63 Exs. 4, 5 - Charge and Amended Charge of Discrimination; Filing No. 1 - Complaint § I(A).

2. On March 18, 2004, the plaintiff signed a Statement of Understanding whereby he agreed to abide by the Rules of the Construction Craft Laborer Apprenticeship Program facilitated by the Laborer's Hall of Construction Laborers Local 1140 (the Union). **See** Filing No. 63 Ex. 8 - Tietsort Aff. ¶¶ 6-7 and Ex. 8(A) - Signed Statement of Understanding.

3. The Union maintains an apprentice-only hiring hall list. When an employer requests an apprentice from the Union, a job offer is given to the person at the top of the list. The only way the order of hiring apprentices changes is if an employer requests a specific apprentice and the apprentice has worked for the employer during the previous year. *Id.* Ex. 9 - Hayes Aff. ¶¶ 5-6.

4. Kiewit Construction Company did not request the plaintiff, by name, or any apprentice off of the Union hiring hall list from August 19, 2004, through November 13, 2004. *Id.* ¶¶ 7, 42.

5. The plaintiff was referred to Kiewit Construction Company from the Union on May 24, 2004, as a Laborer Apprentice and he was assigned to various Kiewit Construction Company projects as needed. *Id.* Ex. 1 - Request for Admission No. 1; **see also** Ex. 7 - Sewell Aff. ¶ 4.

6. The plaintiff was laid off from Kiewit Construction Company on August 19, 2004, due to lack of work. *Id.* Ex. 1 - Request for Admission No. 2; **see also** Ex. 7 - Sewell Aff. ¶ 4.

7. The nature of construction work is that there are constant hires and lay offs by contractors, depending on the availability of projects. *Id.* Ex. 1 - Request for Admission No. 3.

8. Between August 19, 2004, and January 31, 2005, Kiewit Construction Company laid off approximately 26 workers, including apprentices and journeymen, due to lack of work. *Id.* Ex. 7 - Sewell Aff. ¶ 5; Ex. 7(A) - Layoff List.

9. Prior to December 2004, the Union called the plaintiff to place him on a number of different jobs, but the plaintiff refused the work. *Id.* Ex. 1 - Request for Admission No. 4. The plaintiff refused at least four jobs offered to him through the Union between August 19, 2004, and November 11, 2004. *Id.* Ex. 9 - Hayes Aff. ¶¶ 33-38.

10. The Union informed the plaintiff he would be removed from the Labor Apprenticeship Program if he refused the next job to which he had been assigned because (1) he failed to accept jobs to which he had been assigned, (b) he accepted at least one job initially and then subsequently refused to work, and (c) he informed the administrator that he would not take any apprentice job other than one with Kiewit Construction Company. *Id.* Ex. 8 - Tietsort Aff. ¶ 19; Ex. 8(C) - Oct. 26, 2004 Training Fund Minutes p. 2-4; Ex. 8(D) - Oct. 26, 2004 Letter from Merksick to the plaintiff.

11. On November 11, 2004, the plaintiff was offered a job opportunity by the Union, which job the plaintiff turned down. The next day, the Union notified the plaintiff that he had been removed from the Labor Apprenticeship Program. *Id.* Ex. 8 - Tietsort Aff. ¶¶ 23-24; Ex. 8(D) - Nov. 12, 2004 Letter from Merksick to the plaintiff.

12. The plaintiff did not appeal his dismissal from the Labor Apprenticeship Program as provided in the Rules of the Labor Apprenticeship Program. *Id.* Ex. 8 - Tietsort Aff. ¶ 25; Ex. 8(A) - Rules.

13. By mid-December 2004, the plaintiff was no longer a member of the Union because he had refused placements on too many occasions. *Id.* Ex. 1 - Request for Admission No. 5.

14. On January 18, 2005, the plaintiff filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission (NEOC). *Id.* Ex. 4. The NEOC Charge was amended on February 24, 2005. *Id.* Ex. 5.

15. On June 16, 2006, the NEOC issued two No-Cause Determination letters. *Id.* Ex. 6.

16. On November 1, 2006, the plaintiff filed a complaint against the defendant. **See** Filing No. 1.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); **see** ***Nat'l Am. Ins. Co. v. W & G, Inc.***, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" ***Chambers v. Metro. Prop. & Cas. Ins. Co.***, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** ***Anderson***, 477 U.S. at 248). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." ***Celotex***, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); ***Rodgers v. City of Des Moines***, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); ***Murphy v. Missouri Dep't of Corr.***, 372 F.3d 979, 982

(8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); ***Janis v. Biesheuvel***, 428 F.3d 795, 799 (8th Cir. 2005).

> Under this court's local rules:
>
>> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

> Additionally:
>
>> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis in original).

## ANALYSIS

### A. Request for Admissions

On March 2, 2007, the defendant served the plaintiff with requests for admission. **See** Filing No. 33 (certificate of service); Filing No. 63, Ex. 1 - Requests for Admission. The plaintiff did not serve a response to the requests. Therefore, the defendant contends the requests for admission must be deemed admitted. Further, the defendant argues these admitted facts support the defendant's motion for summary judgment.

Federal Rule of Civil Procedure 36 allows a party to serve on another party a written request for admissions regarding any statement or fact relevant to the pending action. Rule 36(a) further provides:

6

>A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

The matters admitted are conclusively established unless the court grants leave to withdraw or amend the admissions.  **See** Rule 36(b).  On motion of a party, the court may permit withdrawal or amendment of the admissions, "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  **Id.**  Prejudice "in this context means the difficulty a party may face in proving its case because of the sudden need to obtain evidence."  **Manatt v. Union Pac. R. Co.**, 122 F.3d 514, 517 (8th Cir. 1997); **see Conlon v. United States**, 474 F.3d 616 (9th Cir. 2007).  The court may also consider "[t]he presence of improper conduct by the party moving to withdraw or amend an admission, and that party's lack of reasonable explanation for untimely discovery responses."  **Carlson v. Freightliner LLC**, 226 F.R.D. 343, 361 (D. Neb. 2004).

The requests for admission are as follows:

>Request for Admission No. 1:
>Plaintiff was referred to Kiewit Construction Company from the Laborer's Hall of Construction Laborers Local 1140 on May 24, 2004, as a Laborer Apprentice, and was assigned to various Kiewit Construction Company projects as needed.
>
>Request for Admission No. 2:
>Plaintiff was laid off from Kiewit Construction Company on August 19, 2004, due to lack of work.
>
>Request for Admission No. 3:
>The nature of construction work is that there are constant hires and lay offs by contractors, depending on the availability of projects.
>
>Request for Admission No. 4:
>Prior to December 2004, Construction Laborers Local 1140 called Plaintiff to place him on a number of different jobs, but Plaintiff refused the work.

7

>Request for Admission No. 5:
>By mid-December 2004, Plaintiff was no longer a member of Construction Laborers Local 1140 because he had refused placements on too many occasions.

**See** Filing No. 63, Ex. 1.

The plaintiff did not move to withdraw or amend the admissions. The plaintiff does not give any explanation for his failure to provide responses. It does not appear the substance of the requests are disputed. However, the plaintiff maintains he was subject to unlawful discrimination, rather than laid off due to a lack of work.

Under the circumstances of this case and based on the importance to the case of the controverted fact in Request for Admission No. 2, to deem the requests admitted may "be anathema to the ascertainment of the truth." **White Consol. Indus., Inc. v. Waterhouse**, 158 F.R.D. 429, 433 (D. Minn. 1994). Therefore, only with regard to Request for Admission No. 2 (1) the presentation of the merits would be hindered by adherence to the admission and (2) the defendants will not be prejudiced by the withdrawal. The defendant has known the plaintiff denied he was laid off due to a lack of work since the inception of this case, even though the plaintiff did not respond to the requests. In any event, the defendant fails to establish prejudice, primarily because it has other evidence to support the disputed fact. In fact, similar to the party in **Manatt**, the defendant does not allege prejudice and "[t]he necessity of having to convince the trier of fact of the truth of the matter erroneously admitted is not sufficient." **Manatt**, 122 F.3d at 517. Importantly, it appears the defendant filed its motion for summary judgment without conferring with the plaintiff about his failure to serve a response. Accordingly, the court will allow the plaintiff to withdraw the final phrase of Request for Admission No. 2, "due to lack of work."

### B.    Defamation and Slander

The defendant moves for summary judgment on the plaintiff's claims of defamation and slander. The defendant argues the claims should be dismissed because they are untimely, the plaintiff has failed to establish the elements of the offense, and any communications about the plaintiff were protected by privilege. The plaintiff denies summary judgment is appropriate.

8

> To sustain a claim of defamation, the plaintiff must show the defendant made:
> 
> (1) a false and defamatory statement concerning the plaintiff;
> (2) an unprivileged publication to a third party;
> (3) fault amounting to at least negligence on the part of the publisher; and
> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

***Norris v. Hathaway***, 561 N.W.2d 583 (1997) (**citing** 50 Am. Jur. 2d Libel & Slander § 21 (1995), **accord** Restatement (Second) of Torts § 558 (1977)).  Libel is a written defamatory statement, while slander is an oral defamatory statement.  **See *K Corp. v. Stewart***, 526 N.W.2d 429, 433-34 (Neb. 1995).

Nebraska Revised Statute § 25-208 provides that an action for libel or slander can only be brought if done so within one year from the date of the publication of the defamatory matter upon which the action is based.  The one-year limitations period for a claim of libel or slander begins to run on the accrual of the cause of action.  ***Prokop v. Hoch***, 607 N.W.2d 535, 539 (Neb. 2000).  "[A] cause of action for slander or libel accrues on the date of publication of the defamatory matter."  ***Id.***  In this case, if the alleged publication of defamatory matter occurred before October 31, 2005, the statute of limitations expired before the plaintiff began this litigation on November 1, 2006.

In the complaint, the plaintiff alleges the events which form the basis for the lawsuit occurred "between August 1, 2004 and September 22, 2004."  **See** Filing No. 1, p. 2.  In other court documents, the plaintiff alleges the defendant's employees made defamatory statements to the NEOC about the plaintiff.  Specifically, in the plaintiff's opposition to summary judgment, the plaintiff alleges the defendant's supervisors told representatives from the NEOC, on December 8, 2004, that the plaintiff was a "poor worker" and had a "bad attitude."  **See** Filing No. 66, Ex. B - Tr. of NEOC Interview of Edick p. 2-3.  The plaintiff also alleges slander based on an October 21, 2004 memo from Becky Golden, the defendant's Human Resource/EEO Manager, to Jane Sewell, the defendant's Personnel and Recruiting Manager.  ***Id.*** Ex. C; **see also** Filing No. 63, Ex. 7 - Sewell Aff. ¶ 2.  The plaintiff alleges the defendant slandered the plaintiff during interviews conducted by Deb

9

Neukirch, the NEOC investigator, the interviews were conducted in December 2005 and January 2006. It is unclear in some of the plaintiff's allegations on which dates the interviews took place. Mark Jensen, a General Foreman for the defendant, told the NEOC investigator that the plaintiff could not do the work he was assigned and had to be reassigned. **See** Filing No. 66, Ex. G - undated second page of interview notes signed by Deb Neukirch; **see also** *id.* Ex. H, I. Additionally, the plaintiff alleges he was told by someone from the Union that the defendant did not want the plaintiff to return to work because of work-related poor performance. **See** *Id.* Ex. A - Tr. of Oct. 6, 2004 telephone call p. 13-17. However, the plaintiff states he did not believe either that the defendant made the statement or that the statement was true. **See** Filing No. 65 - Brief p. 6. In any event, the plaintiff denies his work performance was poor, and contends in his complaint that any statements alleging poor work performance were made to justify the unfair layoff. **See** Filing No. 1 ¶ 16.

Based on these statements, the plaintiff cannot maintain an action for defamation or slander. To the extent the plaintiff's defamation and/or slander claims are based on statements made between August 1, 2004 and September 22, 2004, or at any time before October 31, 2005, the statements were not made within the one year statute of limitations period set forth in Neb. Rev. Stat. § 25-208, and his claims are untimely. The statements made during the NEOC investigations may have been made within the statute of limitations period, however such statements were privileged. Any statements made by representatives of the defendant to the NEOC regarding the plaintiff's work performance were privileged and cannot form the basis of a claim for defamation. Under Nebraska law there is an absolute privilege granted to parties in judicial and quasi-judicial proceedings. The privilege applies to defamatory statements made during the proceedings if the defamatory matter relates to the subject of the proceedings. ***Knight v. Knight***, 497 N.W.2d 692, 693 (1992); ***Beckenhauer v. Predoehl***, 338 N.W.2d 618 (1983); ***Sinnett v. Albert***, 195 N.W.2d 506 (1972). And indeed, EEOC and NEOC proceedings are quasi-judicial in nature. **See, e.g.,** ***Shabazz v. PYA Monarch, LLC***, 271 F. Supp. 2d 797, 803 (E.D. Va. 2003) (noting "proceedings before the EEOC are quasi-judicial in nature, warranting the application of the privilege"); ***Allen v. St. Cabrini Nursing Home, Inc.***, 2001

WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001) ("Statements submitted to administrative agencies are protected by absolute privilege."); **Stith v. Chadbourne & Parke, LLP**, 160 F. Supp. 2d 1, 8 (D. D.C. 2001) (noting statements made by a defendant to the EEOC, whether preliminary to a quasi-judicial proceeding or part of such a proceeding, are absolutely privileged and cannot form the basis of a claim for defamation); **Hurst v. Jiffy Lube**, 2000 WL 1790112, at *5, 2000 (E.D. Pa. Dec. 6, 2000) ("The privilege has generally been extended to statements made during quasi-judicial proceedings, such as EEOC proceedings, because such proceedings are initiated in the regular course of preparing for contemplated proceedings in the employment discrimination context."). Therefore, any statements made by representatives of the defendant to the NEOC regarding the plaintiff's work performance were privileged and cannot form the basis of a claim for defamation. Accordingly, summary judgment is appropriate on the plaintiff's claims of defamation and slander as against the defendant.

**C.   Discrimination**

The plaintiff alleges he was discriminated against by the defendant when the defendant laid off the plaintiff on August 19, 2004. **See** Filing No. 1. The plaintiff contends the plaintiff laid him off work and failed to re-employ him based on his race in violation of Title VII, the NFEPA, and 42 U.S.C. § 1981. **See** Filing No. 65 - Brief p. 1. Further, the plaintiff alleges the defendant discriminated and/or retaliated against the plaintiff by failing to re-employ him after the plaintiff complained of the discriminatory layoff, by failing to notify him of job openings and by sending him to undesirable work locations. *Id.* p. 10. In the plaintiff's brief, he also alleges the defendant discriminated against him during his employment by virtue of a hostile work environment including the types and manner of job assignments. **See** *id.* p. 3-4.

### 1.      August 19, 2004 Layoff

The plaintiff must establish the minimal requirements for a prima facie case of race discrimination to proceed under his claims.[3] To make a prima facie showing of discrimination, the plaintiff must show 1) he is a member of a protected group; 2) he was meeting the legitimate expectations of his employer; 3) he suffered an adverse employment action; and 4) "similarly situated employees outside the protected class were treated differently." **Carpenter v. Con-Way Cent. Express, Inc.**, 481 F.3d 611, 616 (8th Cir. 2007) (**quoting Shanklin v. Fitzgerald**, 397 F.3d 596, 602 (8th Cir. 2005). Similarly, "[t]o establish a prima facie case of retaliation under Title VII, a plaintiff must show that he was subjected to an adverse employment action that was causally related to his or her protected activity." **Duncan v. Delta Consol. Indus., Inc.**, 371 F.3d 1020, 1026 (8th Cir. 2004).

In this case there is no dispute the plaintiff is a member of a protected class and that he was laid off from employment.[4] The defendant does not dispute that the plaintiff was meeting his work expectations, for purposes of the motion for summary judgment. The defendant contends the plaintiff cannot show similarly situated employees outside the protected class were treated differently. The defendant provides evidence the plaintiff was laid off on August 19, 2004, due to lack of work. **See** Filing No. 63, Ex. 7 - Sewell Aff. ¶ 4. The defendant shows that between August 19, 2004, and January 31, 2005, the defendant laid off approximately 26 craft workers, including apprentices and journeymen, due to lack of work. **See** Filing No. 63, Ex. 7 - Sewell Aff. ¶ 5; **id.** Ex. 7(A) - 2004 Layoffs. The

---

[3]In analyzing intentional discrimination claims brought under § 1981 and Neb. Rev. Stat. § 20-148, we apply the same standards as we would apply to similar Title VII claims. **See Reedy v. Quebecor Printing Eagle, Inc.**, 333 F.3d 906, 907 (8th Cir. 2003); **Roxas v. Presentation College**, 90 F.3d 310, 315 (8th Cir. 1996) (Title VII burden-shifting analysis applies to § 1981 claims); **Karstens v. Int'l Gamco, Inc.**, 939 F. Supp. 1430, 1439 (D. Neb. 1996) (noting "a claim brought pursuant to Neb. Rev. Stat. § 20-148 grants no greater right than the underlying statute upon which the claim is based."); **Father Flanagan's Boys' Home v. Goerke**, 401 N.W.2d 461, 464 (1987) (following burden-shifting analysis); **see also IBP, Inc. v. Sands**, 563 N.W.2d 353, 357-58 (Neb. 1997).

[4]The plaintiff mentions age discrimination in his brief, but such discrimination was not raised in the plaintiff's complaint. Further, the plaintiff lists his claims for relief on the first page of his brief naming only racial discrimination. **See** Filing No. 65, p. 1. In any event, the plaintiff provides no evidence or argument which would tend to support a claim for age discrimination.

defendant did not request any apprentices through the Union between August 19, 2004, and November 13, 2004.  *Id.* Ex. 9 - Hayes Aff. ¶ 42.

The evidence shows the plaintiff became a member - laborer apprentice - with the Union on March 18, 2004.  The Union maintains a hiring list for its apprentices.  The Union refers apprentices to employers based on the rank order of apprentices on the list.  The list is not kept based on seniority, the first available apprentice is listed first.  For example, if an apprentice becomes out of work such apprentice is listed on the bottom of the list and rises as the upper apprentices are placed in jobs or otherwise removed from the list.  An exception exists for an apprentice who is specifically requested by an employer.  The defendant did not request any apprentice from the Union during the period August 19, 2004, through November 13, 2004.

On May 24, 2004, the Union referred the plaintiff to the defendant after the defendant requested a laborer apprentice.  The plaintiff worked at various jobs and job sites.  The plaintiff was employed with the defendant until August 19, 2004.  The plaintiff was the only employee laid off on that date, however the defendant laid off approximately 26 workers during the period August 19, 2004, through January 31, 2005.  In the plaintiff's complaint, he alleges the defendant retained at least three illegal immigrants on the job site when the plaintiff was laid off.  **See** Filing No. 1.  There is no evidence before the court to support the plaintiff's allegation.

After the plaintiff was laid off from work with the defendant, the Union attempted to place the plaintiff in other employment.  The plaintiff refused other work placements stating he preferred to work with the defendant.  The plaintiff states he was concerned that if he took another placement he would not be able to accept a subsequent job opening with the defendant.  The plaintiff refused at least four job placements which were offered to him by the Union between August 19, 2004, and November 11, 2004.  The Union warned the plaintiff that if he refused another placement he would be removed from the apprentice program.  On November 12, 2004, the plaintiff was removed from the program.  The plaintiff did not appeal his dismissal.

During the period after the plaintiff's layoff from work with the defendant, the plaintiff contacted the defendant and the Union several times to ask about the availability of work

and the reason for his August 19, 2004 layoff. The defendant informed the plaintiff that the layoff was based on "budgetary reasons" or a lack of work. However, at some point the plaintiff was told employees of the defendant complained about the plaintiff's work ability and attitude. A representative of the Union told the plaintiff that the defendant refused to rehire the plaintiff. Representatives of the defendant denied the statement and told the plaintiff that defendant merely made requests of the Union for "laborers" which the Union referred. During the NEOC investigation of the plaintiff's discrimination charge, employees from the defendant made statements about the plaintiff's work performance, some positive and some negative. The issue of whether the plaintiff had poor work performance is not a material fact in dispute for purposes of this motion because the defendant does not deny the plaintiff was meeting the expectations of his employment. The statements regarding the plaintiff's performance are only relevant to the extent they provide evidence that the defendant's stated reason for the plaintiff's layoff is a pretext for racial discrimination.

The court need not reach the issue of pretext because the plaintiff fails to make a prima facie case of racial discrimination. The plaintiff fails to show he was treated differently than similarly situated employees outside the protected class. Although the evidence shows the plaintiff was the only employee laid off from work on August 19, 2004, there were 26 workers laid off between August 19, 2004, and January 31, 2005, due to lack of work. **See** Filing No. 63, Ex. 7 - Sewell Aff. ¶ 5; Ex. 7(A) - Layoff List. Additionally, the defendant did not hire any other apprentices until after the plaintiff was dismissed from the Union program. *Id.* Ex. 8 - Tietsort Aff. ¶¶ 23-24; Ex. 9 - Hayes Aff. ¶ 42. Notably, the evidence shows the defendant routinely hired and laid off a variety of individuals.

The plaintiff argues he was treated differently than non-minority co-workers in the performance of the work (Filing No. 65, Brief p. 4) or in references to work performance after his layoff (*Id.* p. 2), however the plaintiff makes no argument and provides no evidence showing he was treated differently than others with respect to his layoff, except in the body of the complaint as noted above. The plaintiff's NEOC charge lists five individuals who the plaintiff states were not laid off. **See** Filing No. 63, Ex. 5 - Amended Charge of Discrimination. The plaintiff fails to show any of the unnamed illegal aliens or the five people listed in the NEOC charge were similarly situated to the plaintiff.

Specifically, there is no evidence in the record to suggest those individuals were in the same position as the plaintiff in terms of employment status, employment skills, under the same supervisor, on the same job site, or subject to the same budgetary restrictions. Similarly, the plaintiff fails to show he was treated differently than any other with regard to re-hiring. Contrary to the plaintiff's assertion, there is no evidence the defendant requested any apprentice to return between August 19 and November 13, 2004.[5] For these reasons, the plaintiff has failed to show he was treated differently than other employees outside the protected class. Because the plaintiff has failed to make such a showing, he has not met his burden of alleging facts sufficient to establish the minimum requirements for a prima facie case of race discrimination with regard to the August 19, 2004 layoff.

Assuming the plaintiff had made a prima facie case, he must then present evidence sufficient to show the defendant's proffered reason for his layoff was a pretext for discrimination, and that the company's alleged discriminatory motive was determinative of the decision to effect the layoff. **See *Wallace v. DTG Operations, Inc.***, 442 F.3d 1112, 1125 (8th Cir. 2006). The plaintiff admits he was told initially that the reason for his layoff was a "budgetary move" or there was "no more work available." **See** Filing No. 1 - Complaint p. 2; Filing No. 63, Ex. 5 Amended Charge of Discrimination. The plaintiff contends the defendant's post-layoff statements about his poor performance are evidence that a budgetary restriction or lack of work was not the true reason for the layoff. The plaintiff argues the untrue statements about his performance were made to mask the true reason for his layoff which is racial discrimination.

The court determines the plaintiff has failed to show the defendant's stated reason for the layoff was pretext. The plaintiff argues "lack of work" or budgetary constraints cannot be the true reason for the layoff because the defendant is a large wealthy company.

---

[5]The plaintiff contends other employees were "requested to return" and shows two Hispanic employees did have comments written on "Employee Profiles," such as "good employee" and "rehire ASAP," which comments were not written on the plaintiff's profile. **See** Filing No. 65 - Brief p. 2 and Filing 66, Ex. D. These comments do not support the plaintiff's position because they do not dispute the defendant's stated reason for the layoff or failure to rehire before the plaintiff was separated from the Union. Additionally, the plaintiff fails to show these individuals are similarly situated to the plaintiff. The documents show the individuals were laid off well after the plaintiff and had a different supervisor. Further, there is no evidence the defendant asked the Union that these individuals be hired instead of the plaintiff or out of order on the hiring list. Finally, the defendant objected to use of the documents on the bases of foundation and hearsay.

However, the pretext analysis is not an opportunity "to engage in second-guessing of an employer's business decisions. Our anti-discrimination laws do not require an employer to make proper decisions, only [non-discriminatory and] non-retaliatory ones." ***Lemaire v. Louisiana Dep't of Transp. & Dev.***, 480 F.3d 383, 391 (5th Cir. 2007); ***Zhuang v. Datacard Corp.***, 414 F.3d 849, 857 (8th Cir 2005). The plaintiff's simple dispute of the underlying facts of the employer's decision is not sufficient to create an issue of pretext. ***Lemaire***, 480 F.3d at 391. Further, the evidence before the court suggests the defendant made several layoffs around the same time as the plaintiff's layoff and the defendant did not hire anyone in the plaintiff's position for some months afterward. Therefore, the defendant's size and wealth does not tend to show the defendant's stated reason for the plaintiff's layoff was pretext for discrimination.

The plaintiff has provided no evidence to support his claims, and a "prima facie case [ ] built on pure speculation and peripheral facts [does] not support an inference of discrimination." ***Moore v. Hertz Equip. Rental Corp.***, 296 F. Supp. 2d 1044, 1050 (D. Neb. 2003). "[S]keletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact so as to preclude summary judgment." ***Thomas v. Corwin***, 483 F.3d 516, 530 (8th Cir. 2007). Here there is no evidence to dispute that an apprentice member's position on the hiring list at the Union and the defendant's business need for a number of employees were the only criteria used. Critical to the plaintiff's claims, there is no evidence in the record to suggest the defendant based either the layoff or its later hiring decisions on the plaintiff's race. Accordingly, the defendant's motion for summary judgment of the plaintiff's claims for discrimination must be granted.

### 2. Other Alleged Discrimination

The plaintiff also argues the defendant must show non-discriminatory reasons for (1) failure to notify him of job openings after his layoff; (2) retaliating against him for filing a grievance; and (3) sending him to undesirable job locations. **See** Filing No. 65, Brief p. 10. There is no basis in the record for any of these allegations. The record shows the plaintiff called the defendant repeatedly asking about job opportunities, but that the

defendant called for no new laborer apprentices before the plaintiff was separated from the Union.

There is also no evidence the plaintiff filed a grievance of any kind with the defendant before the layoff.  Any grievance filed afterward cannot form the basis of the plaintiff's claim because there is no evidence of retaliation.  This is because the plaintiff fails to show a causal connection between his failure to attain his desired position and his grievance.  "An inference of a causal connection between a charge of discrimination and [an adverse action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." **Peterson v. Scott County**, 406 F.3d 515, 524-25 (8th Cir. 2005) (engaging in protected activity within two weeks of adverse action is close enough to establish causation in a prima facie case) (internal citations omitted).  The defendant did not hire any laborer apprentices through the Union in the period between the layoff, any grievance and the plaintiff's separation from the Union.  Further, the plaintiff fails to allege any other act of retaliation.

The plaintiff's allegation of being sent to undesirable job locations is unsupported in the record.  It appears the plaintiff may be referring to the Union.  The plaintiff argues the Union offered the plaintiff undesirable employment, which he did not accept while he waited for another job placement with the defendant.  To the extent the plaintiff is arguing he was assigned to undesirable jobs with the defendant, such argument is addressed below in the context of the plaintiff's allegation of a hostile work environment.

### 3. Hostile Work Environment

A plaintiff bringing a Title VII action in federal court must first have exhausted his administrative remedies by filing a timely charge of discrimination with the EEOC or NEOC. **Dorsey v. Pinnacle Automation Co.**, 278 F.3d 830, 838 (8th Cir. 2002).  The purpose behind filing a charge with the EEOC is to give the Commission an opportunity to investigate and try to resolve the controversy through conciliation before allowing the aggrieved party to pursue a lawsuit.  **Alexander v. Gardner-Denver Co.**, 415 U.S. 36, 44 (1974).  "Because persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality in order not to frustrate the remedial

purposes of Title VII." *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) (citation omitted). Therefore, the scope of the subsequent action is not necessarily limited to the specific allegations in the charge. *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998). "Even so, there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." *Duncan v. Delta Consolidated Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (internal citation omitted). The plaintiff may proceed on any exhausted claim, that is on any claim for "any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols*, 154 F.3d at 887; **see also** *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000). In other words, "[t]he sweep of the administrative charge is as 'broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination.'" *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1216 (8th Cir. 2001) (**quoting** *Kells*, 210 F.3d at 836)). While a plaintiff's claim of discrimination should not be dismissed based on mere procedural technicalities, where the plaintiff only charges certain forms of discrimination without ever hinting at another claim, dismissal for failure to exhaust administrative remedies is proper. **See** *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994). A plaintiff "may not make a conclusory statement of sex discrimination in the charge and then file suit on whatever facts or legal theory she may later decide upon." *Faibisch*, 304 F.3d at 803 (dismissing gender discrimination claim not sufficiently raised in EEOC charge).

The plaintiff failed to exhaust his claims based on a hostile work environment because he did not raise those claims in an NEOC charge. The plaintiff provides no explanation for his failure to raise those claims in the NEOC charge. The plaintiff's NEOC charge alleges the date of discrimination was only August 19, 2004 - the date of his layoff. **See** Filing No. 63, Ex. 5 Amended Charge of Discrimination. The NEOC charge does not allege any discriminatory conduct pre-dating the layoff.

Since the plaintiff's NEOC charge does not explicitly allege discrimination based on job assignments, such of the plaintiff's claims have only been exhausted if they reasonably related to, or grow out of, the substance of his allegations in the administrative charge.

***Russell v. TG Missouri Corp.***, 340 F.3d 735, 747 (8th Cir. 2003).  In this case, the plaintiff's NEOC charge does not allude to any negative conduct by the defendant prior to the layoff.  Because the layoff and later conduct is the only conduct mentioned in the NEOC, prior conduct is not reasonably related to the substance of his allegations in the administrative charge nor could reasonably have "grown out of" the administrative charges. **See *Philipp v. ANR Freight Sys. Inc.***, 61 F.3d 669, 676 (8th Cir. 1995); ***Wentz v. Maryland Cas. Co.***, 869 F.2d 1153, 1154 (8th Cir. 1989).  Therefore, to the extent the plaintiff alleges the job assignments were racial discrimination unrelated to the layoff, particularly the events which occurred prior to the plaintiff filing an NEOC charge, the claims were not sufficiently exhausted.  **See *Russell***, 340 F.3d at 747-48.

For the reasons stated above, the defendant's motion for summary judgment on all of the plaintiff's claims will be granted.  Upon consideration,

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 61) is granted.
2. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 6th day of December, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge